Before you get started, can I make a request of you? Yes, Your Honor. This is an unusual case, and there are mounds of allegations and claims and excoriations. At least for me, and I suspect it would be true for my colleagues, it would be very helpful if you could focus on your best argument. There's a whole bunch of them out there, and the district court has found certain things. We're not a fact-finding body. The district court is. I, for one, would like to know what – which is your very best argument? Not all of your arguments, but what is your very best argument, doing your best to try to be as non-pejorative as possible? Very well, Your Honor. I shall do my best. Okay. And may it please the Court, my name is Joshua Boxer, and I represent the appellant at the Mills Law Firm. With me is Mr. Mills, and I will be sharing my time with Appellant Carol LaPlante. I've asked the clerk to reserve five minutes for rebuttal. Okay. Just a moment. You should keep track of that. We'll try to help you, but keep your eye on that clock, too, okay? I shall do my best, Your Honor. There's no trapdoor, but we do follow the clock. I saw a hook over there in the corner that I had on my arm. That's different. Okay. That's actually a spear. Even worse. Okay. Very well, Your Honor, this is a case about preserving the neutrality and impartiality of our decision-makers. And to address, Your Honor, very directly, this is a case in which the arbitrator, after his designation in this MDL proceeding, developed a personal and financial interest in another case, the Salvas case, involving these same parties in which he had an interest that was adverse to Mills and his clients and aligned with the Pelley's. Let me just stop you just for one second, and you can continue on if you want to. But this is one of those deals where the district court found that that wasn't so. Now, I'm not saying he's right or wrong. I'm just saying that's what the district court found. What are we as a court of appeal to do with that? We're not fact-finders. Are we looking at substantial evidence? Are we looking at clear error? What's the standard of review that we apply for considering the factual determinations that the district court made? There are a couple of questions in there, Your Honor. But first, regarding the standard of review, I don't think there's a dispute that factual findings are reviewed on a clear error basis. However, as we've addressed here and as we've addressed as the this Court has addressed in U.S. Life Insurance Company v. Superior National Insurance Company, in a situation where the Court was called upon to review an order denying vacater based upon these same grounds, the Court found that those were issues that involved questions of law, in which case the matter was reviewed de novo. Roberts. Kagan. I'm sorry. No, no. Just what you're saying, and I have a threshold question for you. Okay. I do want to address this point right from the get-go, Your Honors, which is that the district court failed to mention whatsoever the personal and financial interest that was embedded in the salvus term sheet that was proffered by these appelees and strenuously objected to by the Mills firm and its clients. Because it's a very important point, because the district court exclusively focused on the mediation or purported mediation itself, rather than the business interest that this arbitrator had that was tethered to the salvus term sheet. That's what we were opposing as to your question, Your Honor. Okay. Now I do have a question, because I have a question about the district court's jurisdiction and construing the settlement agreement and the district court's review. Now, as I looked at it, you had two sections that were — that you pointed out to us. And the 15.2 seemed to give authority for the district court to — or for appeal of the district court's award of attorney's fees, but the section 22.9, which seems directly applicable here, which is allocation by the arbitrator among class counsel, refers to a binding, non-appealable arbitration, which then was appealed to the district court. So is that language, that agreement that the arbitration was binding and non-appealable, is that applicable to the question that was before the district court? The district court, when faced with the question of whether or not the matter could be appealed in any circumstances, indicated directly, and this is the district court docket, number 736, page 3, the district court found that although section 22.9 of the settlement agreement refers to binding, non-appealable arbitration, courts have interpreted similar language to mean that the merits are not subject to court review, but the parties do not give up their right to appeal the arbitrator's decision for any of the reasons set forth in the Federal Arbitration Act. Now, we don't have a case on that, right? I mean, after Hall, it said, the Supreme Court said you can't — the parties can't agree to expand the scope of review, but we don't have a case that says the parties cannot agree to contract the scope of review, do we? Well, Your Honor, what we have in this situation and what the district court explicitly found, citing to Team Scandia and others — That's a district court case, though, right? Do we have a circuit court? It is, Your Honor, and I believe this would also be supported by a recent case that I'll have to get to, Your Honors, in rebuttal, in which this court found that the job of the district court can't be to simply rubber stamp an arbitration award, rather than, unless there is explicit waiver of the right to appellate review, then the district court is entitled to review and further that the parties don't waive. I thought we left that open in Kiosera. We said you can't expand, but we're not going to say maybe contracting is something different. I'm just — I'm curious, because it seemed like this is a question of first impression for us, and was curious as to whether there was any case on point. And you're relying on the district court cases saying you can't rubber stamp. But is that still good law after Hall, after the Supreme Court's opinion in Hall, saying it says what it says? It is, Your Honor, and I think there are a couple of facts that the district court relied upon in the settlement agreement as a whole. As we referenced in our opening brief, this Court and the Supreme Court, I believe, have instructed courts to review an agreement as a whole to determine whether or not the parties intended to waive all forms of judicial review. And here, the district court found that in a number of areas, the parties reviewed — referred, in fact, to appeals. For example, with respect to the Qualified Settlement Fund, the settlement agreement and the district court found that no funds could be released until after any appeal — you know, an appeal, if any, of a motion of a review of the allocation of attorneys. So the court had to approve the allocation plan, and that decision could be appealed. But I don't see anything that changes this binding, non-appealable arbitration. That seems pretty clear. Your Honor, from our perspective, it simply can't be the law that after parties designate an arbitrator, they sacrifice the ability to challenge that designation based upon intervening events. Why didn't they put that in the agreement, then? I mean, the agreement seems pretty clear. Well, the case law suggests, Your Honor, that absent clear intent of the parties to waive all forms of judicial review, the grounds for vacater under the FAA remain intact. So binding, non-appealable arbitration isn't clear enough? It means that, as the district court found, that the parties do waive their right to a review of the merits of the award, which is not why we're here, Your Honor. We're here because the FAA provides grounds for vacater in a situation, as were presented here, where the arbitrator had an undisclosed and new financial and personal relationship that was adverse to the Mills firm and aligned with the appellees. So you're saying that Section 10 is what gives you your rights, right? That's right. And plus the judicial gloss of, in quotes, manifest disregard of the law, adding that to it. Is that correct? That's correct, Your Honor. So we should read in where it says, final, non-binding, non-appealable arbitration award, we should read in, except as stated in Section 10. Is that your interpretation? It is, Your Honor. And let me give you just sort of a curt example. If for some reason our arbitrator marries one of our adversaries, parties need to have the ability to challenge that arbitrator's designation based upon intervening events. You can do that by contract also, of course. Well, that contract would need to be clear and explicit, and this district court found that in a number of circumstances, in a number of sections in the settlement agreement, the parties contemplated appellate review, and accordingly, there is no clear and explicit waiver of the right to appellate review, both in the district court and here. So you could have put in the contract, except as stated in FAA Section 10, or you could have put in the contract, but you didn't do that, or the parties didn't do that in the contract. So what is it that suggests we should read in the FAA into that section of the contract? Your Honor, I've never seen a case where parties in fact included a situation where the parties are waiving their right to appellate review, except for if the  The FAA, again ---- It's a matter of public policy, they couldn't waive it, is what you're saying? I do believe that the parties should not be able to waive that, or courts should not find a waiver absent, explicit waiver of those grounds. And in the absence of that, the parties should be able to challenge an arbitration award based upon the grounds set forth in the FAA. So you're saying that in this case, in order to make the nonappealable section truly valid, they would have had to say that we expressly waived the provisions of Section 10 of the FAA and any manifest disregard of the law. Is that correct? I would think they would need to do that, Your Honor, and also ---- And would that be effective? Wait. Would that be effective? Because the Supreme Court has said you can't expand review, so the parties could contractually say, we want the court to review not only what it says in the FAA, but also other things about the arbitration award. The Supreme Court said, no, you can't do that. So would the parties be able to waive review, even if they put it in expressly? I'm not sure, Your Honor, but what the district court found here was not only did the parties not waive those grounds in Section 22.9, but also in other areas of the agreement, it spoke to the ability of the parties to seek review and that no funds would be issued until after the appeals had run. So that would be a legal issue. That we do review de novo, correct? Right, Your Honor. And so in answer to your question directly, would that be sufficient? Perhaps not, unless there was the absence of contrary language, and that's the contrary language that the district court found here, that in other areas of the agreement the parties spoke to contemplated judicial review of that award. I have a procedural question, and it may seem strange, because I don't think the district court raised it. Here you have a former Federal district judge who acts as the arbitrator. You've said some horrible things about him, but he's not a party. He's not here. He's not representing himself. He doesn't – I suppose that the other side defends his actions in some way, but in effect, it's almost like there's a default, at least in terms of any representation from him. Is there any requirement that he be involved? I don't know whether you're seeking anything directly from him as a result of the allegations that you're claiming. I know you're seeking to get more money out of the attorney fees, but is there any attempt to seek anything, if you were right? I'm not in any way saying you are, but if you were. Would you not be seeking something from this former judge? To answer Your Honor's first question about a procedural requirement, I think in any situation in which parties are seeking to vacate an arbitration award, there's always that other out there, the arbitrator, whose conduct and conflicts may be called into question, but who is not formally a party. So it's not necessary procedurally to join him in the action? No, Your Honor. But more importantly, this is a case not just about what might happen with the fees here. This is a case about ensuring the fundamental safeguards that this Court has found in Schmitz v. Zelvetti, in New Regency Productions, and under Commonwealth codings, that parties cannot intelligently, educatedly choose their arbitrator in the absence of full disclosure, and that in this situation, we have a case where the arbitrator developed a personal interest in the outcome of a separate matter, refused to recuse himself over a year and a half before his jurisdiction would ever ripen, and then appeared to take sides with the appellees, and against the appellant, that arbitrator was in that settlement, and our urging was rejected. And the Court in Massachusetts sternly rebuked the arbitrator, the appellees, and all of their conduct. Let me just ask you a quick question. You're at 6 minutes, and do you want your other colleague to say something or? I do. She has some important points to make, Your Honor. Okay. Because you're running out of time, and if you wanted to save your 5 minutes, she doesn't have much. I certainly do, and I'm sure Ms. Blupan will be brief. Good morning, Your Honor. I have just a few very quick comments, and that is that the district court – I'm Carol LaPlante, and I'm in PROPER, and I'm another one of the appellants. The district court erred by not finding any instance of failure to disclose on the part of the arbitrator, yet it's not disputed that he never disclosed to me his involvement. Excuse me one second. Let me just follow up on that. Again, we're a court of appeal. We're bound by the record. We have these findings that we review, as your co-counsel agreed, but for clear error on what do we rely, to what do we look to satisfy ourselves about what you're saying. Now, I hear your allegation, you're a direct party involved, but, again, we're a court of appeal. We're not taking testimony, so what do we look to, to, you know? Well, the opinion of the district court is silent as to all my evidence as to the arbitrator's failure to disclose his other involvements to me, which he was obligated to. And does silence denote consent for purposes of this matter? I did not consent to his involvement. No, no, no. I'm talking about if the district judge didn't talk about it, does that mean he agreed with what you said? Is that what we're supposed to interpret? Well, I think because he ignored it and it was grounds for vacator, I think he committed an error. I see. Okay. And the three areas where the arbitrator unquestionably did not disclose his involvement were it was in the Salvas case where he got further and further embroiled in antagonism to the appellants and in his arbitration of various purported disputes for Mr. Bonsignor against Mr. Mills and Ms. Burton where they refused to give him jurisdiction to arbitrate those matters and refused to participate, and he issued scathing opinions about their conduct based only on Mr. Bonsignor's side of events. Also, there was the smokeless tobacco litigation where the arbitrator worked with Mr. Bonsignor and never disclosed that connection to me or to the other appellants. So because I think the failure to disclose important and very prejudicial connections that he had to the appellant, to the appellees, made this arbitrator unfit to issue the fee allocation arbitration decision in regard to me. And I think for that additional reason, the decision of the district court should be overturned. Thank you. You want to save the rest of your time for rebuttal? Yes. Okay. Very good.  Your turn. Good morning, Your Honors. May it please the Court. My name is Robert Bonsignori, and I appear on behalf of the Appellee MDL 1735 Council. Appellant's request for reversal must be denied for three reasons. First, nothing in the appellant's submissions trumps the district court's factual findings and proper application of the applicable law. The appellants waived their right to FAA 10 review beyond the district court through the express written terms of the arbitration contract. The district court correctly rejected the appellant's FAA 10 request, its Section 10 request of the arbitration contract for Vegator, finding facts and concluding as to each individual prong of the FAA that the appellants failed to carry their burden. We know that it's the appellant's burden, not the appellee's. As to Ms. LaPlante's suggestion that the district court failed to make findings, it's our position that she didn't properly raise it in the district court. It's not the job of this court or the district court or the appellee's to search for truffles, as the Ninth Circuit made clear in a previous decision. Could I go to the question of jurisdiction once more? Yes. Where in the contract did the appellants waive their right to appeal decisions of the district court? Okay. I we have a variety of opinions from the Ninth Circuit, from the Supreme Court, and from other circuits. And I think the best guidance to this court comes from the Tenth Circuit in the MacTech case, and the best guidance comes from the Ninth Circuit from its own cases. For over a hundred years, and there was a case before California Raisin, and I can't think of it now, but this Court has made clear that in a civil context, people can waive their right to appeal. They can waive their appellate rights. And that's exactly what happened here. When we entered into this arbitration to heavily negotiate its terms, we heavily negotiated the terms in a commercial setting. This is not a consumer setting where someone's trying to force down someone's throat an arbitrary waiver that they have no participation in. And I'll also add that the parties for this particular appeal are sophisticated parties. These are class-action lawyers focusing in, zooming in on an aspect of a case that involved a long-running case. This case has gone on since 2005. But why doesn't Section 10 control, notwithstanding in 22.9, the attempt to say that the arbitration was nonappealable? Because the Supreme Court has said Section 10 controls when the parties try to contract to expand the scope of appellate review. Okay. I think that the contract has to be read as a whole, the arbitration contract. So first we have the premise it's okay to waive appeal. We have the McTech case that says it's okay to limit it to the district court. And the Supreme Court denied certification. It is okay to limit review to the district court. And what we did here was deliberate and careful, and we did the best that we could. There's no bright line where the courts have said this is what you need to say. And as my opponent suggested, there's no bright line among lawyers trying to do it. We can only put in what we think is clear. And that is that Section 10, 22.10, vested exclusive continuing jurisdiction in the district court. From our perspective, there can be nothing more clear than that. This Court has no independent jurisdiction. Kennedy, let me be sure I understand you. By the way, the truffles was Judge Posner, I think, but nonetheless. You're saying, in answer to Judge Yakuta's question, that the way this contract was worded and its binding pursuant to McTech, the district court had the ability to consider the Section 10 complaints and I assume the manifest disregard of the law issue. That was it. There was a waiver of any right to appeal from that. Is that correct? Precisely. And the reason that that's important is because, first of all, there is no judicial rubber stamp. There's no allegation. I don't understand that because the language in McTech was very different. It said basically the district court judgment upon the award rendered by the arbitrator shall be final and non-appealable. And so it was looking at the district court judgment. You don't have that. The district court judgment on this language is talking about binding non-appealable arbitration. So it's the arbitration itself that's non-appealable, not the district court's judgment. So where do you see that it's the arbitration? And in fact, your 22.10 says that it's subject to the arbitration provision 22.9. So I'm very confused about how the district court got into the picture, at least in reading 22.9 and 22.10 together. Now, the McTech case was in place. Lots of lawyers have tried to copy it, and they failed. What we tried to do was to take a fresh approach and be blunt and clear. And so within the contract, for example, in Section 15, I think it's 15.2, we provided very clearly for an appellate mechanism if our gross attorney's fees were denied. So that was an issue that was very important to us, as was the allocation. When that came up, we said, look, let's be clear. If we are not – if we do not get what we want for the gross attorney's fee in this high-risk case, we have the right to appeal. And further, this appeal will be separate, it doesn't involve the class, it takes us on a separate track. We said no such thing in 22.9. In fact, 22.10 governs, and it says, binding non-appealable judgment, and it says the exclusive, exclusive continuing jurisdiction is in the district court. And with all due respect, exclusive continuing jurisdiction in the district court doesn't have the appeals court in it. And the appeals court does not have, as we know, with all due respect, independent jurisdiction under the FAA 10. Kennedy, you don't – you don't – But it has only the ability to review. So you're – your – bottom line is what you would want us to say is we have this appeal, but we don't have jurisdiction to hear it, goodbye. Is that right? I think that the – I think that the enforcement mechanism under the Raisin case and others is when the court doesn't have jurisdiction, it dismisses the appeal. And I – that's what we would like, and I think that the business community would like it. Right now, there is a need in the business community to be able to resolve the disputes. You referenced a little bit about what the – what's the content of this appeal, and we've gone without pay for 10 years. This case – and it gets lost. Everything about this case gets lost. Let's take the – take it back to 2005. Walmart was the number one corporate defendant in the country. They were enormous. They had unlimited money and unlimited power. They vowed to take every case to trial. They vowed and they did appeal every favorable decision. It was impossible to get lawyers involved in this case. Yet the lawyers in this case stood up, and they came in. When we came in, there were cases filed in certain district courts and state courts. What we took was the cases where class cert had been denied, where the law in the state as far as wage and hour employees was horrible, or where the – in the small states like Wyoming, Montana, where even if we won, the cost that Walmart put us to would not balance out the equation. Yet we took on this corporate defendant, and we brought it forward without pay. And so therefore, what we wanted to do at the end of this was end it. Ten years is enough. Ten years is more than enough. We had the gross fee. We don't want these – and what was going on behind the scenes was not a hidden gorilla. Who wants lawyers arguing about fee and accusations against retired federal judges who behaved admirably and reasonably in the face of attacks brought into the public? Let me ask you about that one ruling that the district court made on the smokeless tobacco cases. Now, as I understand, Judge Phillips was a neutral, an arbitrator in the smokeless tobacco case, and that you were representing one of the parties in that case, or in those cases, and that the district court did not find that Phillips – Judge Phillips disclosed his role. The district court said even if he didn't disclose his role, it doesn't create a reasonable impression of partiality. Now, here is a judge acting as a judge, as a neutral, in the arbitration, but you are representing one of the parties, and then in a subsequent arbitration, you are again representing one of the parties. And at least in some cases have said, well, when you have that sort of contact with one of the parties, you need to – the arbitrator should disclose the role, and then – unless there's actual bias, it's not an issue. Well, here, the district court didn't make that finding. So does that raise a legal question as to whether there is a reasonable impression of partiality given his undisclosed role in the smokeless tobacco cases? I think not, and I'll tell you why. First of all, it's not our burden to establish. It's the appellant's burden. They – Judge Proulx's actual ruling was that they failed to establish that he did not disclose smokeless tobacco, and there's a good reason. Smokeless tobacco was disclosed. I put into the record dozens and dozens and dozens of contemporaneous phone calls to co-lead counsel Burton. Ms. LaPlante was liaison counsel. Ms. LaPlante was also a member of Ms. Burton's firm for several years. Additionally, at the opening of the arbitration, Judge Phillips made clear, I hope that we have better luck if we reach an agreement today than we had in the Massachusetts case that I worked on with Mr. Bonsignori. Thirdly, there's cases such as New Regency that make clear, okay, that you just can't sit on your hands. Someone raised a question about Judge Phillips' ability to be neutral, and that was an appellee. The appellants insisted on Judge – on Arbitrator Phillips, insisted on him. Arbitrator Phillips instantly withdrew from all participation in MDL 1735 upon the allegation of bias, and that was in March of 2009. And that could be found at page 860. So are you saying that even if the district court didn't make that finding, there's overwhelming evidence in the record that Judge Phillips did disclose his role? Is that the point you're making? Yes, overwhelming evidence, and to get – because I didn't want to concede the assumption that you made that he didn't disclose. But if you do, for the sake of argument, say he didn't disclose, the smokeless mediation was in 2007, not in 2009, as they put into their brief, 2007, which was two years before. And so as to that mediation, the court denied it in Massachusetts. They didn't accept the settlement. And so later on, when some settlement agreement was put into the record that Judge Phillips would arbitrate any disputes, there's also no evidence that Judge Phillips received notice of that. So I guess I'm not understanding what your argument is, that even assuming the facts were not disclosed, why doesn't that raise a reasonable impression of partiality? Because precisely because he obtained – there's no evidence that he knew he was listed in 2009. As to the 2007 mediation, it was a half-day mediation two days – two years before, with no ongoing continuing financial benefit, and it was rejected. It was rejected. And he had no continuing further financial interest in that business. But what about the $5,000 checks? The 5 – I paid every single expense in MDL 1735 until Mr. Mills came into the scene. If you refer to docket 860, excerpt of record 860, and you just look at the term sheet, Judge Phillips performed the arbitrate – the mediation in December of 2009. Thereafter, weekly, weekly, Judge Phillips performed arbitration services. Some of the services were with Wal-Mart. We're arguing about things with Wal-Mart as to the language of the final settlement agreement. Some of the things were between – disgracefully between co-lead counsel. We couldn't agree on a – on a claims administrator. Rust was the only one who could handle 2.5 million employees, period. You need – you can't get RC – well, that's not a bad – you can't get a small lemonade stand to provide a soda service at the 49ers games. The only one who could handle 2.5 million was Rust. Yet the appellants fought us tooth and nail. We had to arbitrate it. Was there any evidence in the record as to what he did for the $5,000? Yes. He did the term sheet, and Burton references on – in docket 860 that there's another matter that we're having some dispute about, and that she's going to bring it up with him the next week. Additionally, Your Honor, one of the – one of the procedural problems that we have is that the appellants failed to raise in – they – they argued the wrong standard of review here, and they failed to allege clear and convincing error on the part of the district court. And so when you ask fairly what's in the record, you're asking someone who had to argue against an amorphous bowl of smoke. So there is things in the record. If they had alleged specifically that that was clear error, we would have hammered it. As we did in the district court, if you look to the excerpts of record, we did point by point affidavits submitted to the district court. Every single line in their brief, every single attachment they had, we rebutted. And that's the type of factual findings that the district court had to weed through. And that's exactly why the district court is in a better position to – to make determinations on fact, and why the law that says that this court should give deference to the district court makes sense. There are massive filings. The arbitrator had 20,000 pages. The district court took 6 months to go through everything that we gave them. And he did – they both did an admirable job – admirable job parsing through everything. And the other thing is the district court had the benefit of having this case since 2005 and was able to judge on credibility and veracity. And so these are judgments that you can't make at the appellate level, or so the case law says. Kennedy. All those go to the merits. And I would get back to what you said before, though. Your position is that as much fun as you all have had submitting all this to us, we really don't have any jurisdiction. We should just say dismiss, right? That's the first position. And the secondary position would be that if not, Judge Proza would have been confirmed on the merits. He went through. They made another mistake, another procedural error, when they came back and they reduced the – I guess they conceded that you review the factual findings through a clear and convincing and the law de novo. But they accused Judge Proza of holding them to the clear and convincing standard, which only applies to FAA 10A1, through all of the four prongs. And he didn't. He just didn't. A clear reading of his opinion makes – I could go through every one. Please don't. The – bottom line, if we get to the merits, your position, I gather, is, you know, we've provided massive evidence that Judge Proza went through everything. He – we have to apply a clear error standard. And if he didn't mention something, it's de minimis non curat lex. Is that right? Yes, Your Honor. Okay. It's better stated than my long-winded – It's a truffle thing. If there are more questions, I'd be happy to answer, but I think I've – Any questions? No, thank you. Okay. Very good. Thank you very much. We'll hear a closing rebuttal here. Thank you, Your Honor. First, in response to Judge Nelson's question, there is nothing in the record whatsoever to suggest what these two checks concerned, including a cashier's check from Mr. Bonsignore to the arbitrator after the arbitrator indicated that all payments should be made to his law firm. Mr. Bonsignore said the term sheet. Well, the term sheet was December of 2008. These checks are in March and April 2009. Nothing in the record, and importantly, nothing from the arbitrator himself, even though he had the burden of disclosure. Well, what was the district court's finding about those? The district court found that they were – erroneously concluded that they were contemporaneously provided to counsel. There, the district court was clearly wrong. He indicated that we received these before final approval, when, in fact, we received them in November of 2009, after final approval. There's never been an invoice. There's never been a bill. Nothing to suggest exactly what these payments concerned. Counsel, just for humor me on this. Sure. Let's assume for a moment that we're going to put aside everything that Judge Prok talked about, but there are certain things that apparently he didn't talk about. Of those things, which do you think is the most important damning evidence that you want us to take into account? The first and foremost point that Judge Prok failed to address in his order was the fact that the salvage settlement agreement that was put forward by the appellees contained new financial incentives for the arbitrator himself that were aligned with the appellees and adverse to Mills and his clients. That fundamental point, Your Honors, that this arbitrator had an interest that was aligned with the appellees and adverse to us, when it first came to light, we asked the arbitrator to step aside. Instead, he refused to step aside in either case, appeared to act as an advocate in support of the appellees and against the appellant's interest. And that clear and that evidence of partiality and bias culminated in a fee award that failed to take to recognize the actual contributions of these counsel. That is the most important point in addition to the nondisclosures that were made to us, that were made to, that were not made to Ms. LaPlante. And one other question, different issue. Several of us have asked questions about the jurisdictional issue. There's the non-appealability aspect of this. There's section 10 of the FAA. I gather it's your position that what you have done is perfectly authorized under the FAA. There was nothing in the agreement that prohibited you from doing so. Is that correct? That is correct, Your Honor. And I do want to address one question that Judge Akuta raised on that issue, which is there is a Ninth Circuit opinion on this point that was cited by the district court, and that was Aerojet General Corp., the American Arbitration Association, 478 F. Second. That's a very old opinion, pre-Hall and all that, right? It is, Your Honor. But I think the principle that ordinary language to the effect that decisions of the arbitrator shall be finding and binding has been held not to preclude some judicial review. Because in Kiyosera, an en banc decision post that, we held open that question about whether they could contract for a narrower standard of review. So I think Aerojet would be superseded on that point by Kiyosera. May I, Your Honor, that the – I don't think that addressed the burden on the party claiming a waiver from in re hap, the burden on the party claiming a waiver of a right must prove it by clear and convincing evidence. Here, the district court found that by the language the parties used in various portions of the settlement agreement, the parties preserved their right to judicial review of this order. I see I'm out of time. You are, indeed. Thank you, Your Honors. Let me ask you whether either of my colleagues has additional questions. No. Actually, not, but thank you very much for offering. The matter just argued is submitted, and we are adjourned for the day. Thank you, gentlemen.
judges: Nelson, Smith, Ikuta